Whenever you're ready. Thank you. Good morning, Your Honor. May it please the Court. Nathan Stump, Schlichter Bogart on behalf of the Plaintiffs. I aim to reserve about three minutes for rebuttal. I'd like to focus on what are essentially the first two issues that we presented on the appeal. The fundamental question before this Court right now is what burden of proof the Plaintiffs must satisfy to prove a loss in an ERISA fiduciary breach case. And the District Court erred when it found that no loss was proven. It erred in three ways. The first way was in failing to recognize that the burden should shift to the defendants after the Plaintiffs have established a suitable comparator and that that comparator needs only to be plausible and possible. It does not need to be probable. In other words, it's the burden on the Plaintiffs to show how the plan could have performed if it had been prudently managed, but not to predict what would have happened if the breach had not occurred. I thought that the – I mean, we're post-trial. The District Court made findings and weighed the different experts in terms of this issue and found the defense experts more credible. So I'm not quite sure I understand. The argument that you're making now, it relates to the dismissal that you're also challenging? Or – No, Your Honor. I'm just talking about what happened at trial. Okay. So then what does it matter in terms of plausibility or not? We're dealing with evidence that the District Court either believed or didn't believe. I appreciate that question. I think the issue is what does a Plaintiff have to show to establish a prima facie loss such that the burden should then shift to the defense? And here the District Court concluded that there was just no loss, so we didn't – I mean, I think the District Court just expressly said, I don't have to resolve that legal question of who's burdened because there's just no loss. And that is sort of walking through how the error occurred. I think that was what I was going to say was sort of the third thing that went wrong was the Court's reliance on indexes and comparison to a pure median fund over the life of the class period to say that no loss had occurred. On that – I'm sorry, I keep interrupting. On that – I'm just trying to sort of figure out the decision tree. On that last point that you just talked about, about the District Court shouldn't have accepted the indices, is that – in your view, is that a legal question? Because the District Court seems to think that's a weighing of evidence and finding one more convincing or credible than another. Are you arguing that that's really a legal question? I think it's a – there's maybe a mixed question of fact in law there. There's a part of it that has to be legal because what we're talking about is taking away something that plaintiff participants had, these Vanguard funds, and then replacing them with something else, with FlexPath. So shouldn't a plaintiff be able to show a loss by showing that the Vanguard funds on the one hand performed better over the class period? In other words, how they performed against an index or pure medians can't negate the losses that were sustained because of the removal of Vanguard. And the case law is clear that plaintiffs are entitled to – the plaintiff is entitled to the greater profits that would have been earned if the breach had not occurred. So what we showed was that there were greater losses associated with our comparators than what the defense offered. And so that really – at that point, it can't really be a credibility determination. It should just be we established suitable comparators to show a loss. The burden now shifts to the defense to show that their decision was objectively prudent or that those suitable alternatives would not have been chosen. But counsel, the whole thing seems to boil down to what's the appropriate comparator. If you took – I'm just pulling this out of here. I have no idea what the numbers are, but if you took Warren Buffett's personal results, is that a good comparator? He did pretty well. Would that be appropriate? Would that meet your requirement? It seems like the district court was not buying your concept that you can pick from one or two different things and say, this is better. What did he get wrong here? I think there's a real difference between picking a comparator for showing a breach and picking a comparator for showing a loss. And the court's – this court's decisions, for instance, in Anderson versus Intel, talk about what comparators a plaintiff needs to show to say that the underperformance is so bad that a prudent fiduciary would have removed the funds. But that's not what we're talking about. We never argued that FlexPath was imprudent because it underperformed Vanguard. We're saying FlexPath was imprudent for a whole host of other reasons, including disloyal reasons when it's selection. So at that point, then, what we need to show is how would the plan have fared if it had been prudently managed? And we didn't cherry pick, you know, sort of outrageous, obscure funds based on how they did after the fact. These were the top-rated target date funds on the market at the time the selection was made. And we had sort of a wealth of evidence, including the defendant's own focus list that were where two of our options appeared. They had the investment policy statement that required scorecards in the selection of funds. We showed that one of our suitable comparators, the American Funds, had tens across the board, sort of the highest scores you could get. So there was a whole host of evidence, Judge Smith, that supported our alternatives, separate and apart from the expert evidence that the judge rejected. So, Ken, you said something that's intriguing to me, and that is the idea of, you know, the evidence necessary on comparators might be different for the breach question than for the loss question. So I'm going to describe what I understand the district court to be saying, and then I want you to sort of fit that in that dichotomy that you've just set up. So I understood the district court to be saying, I have one expert that has picked out these individualized funds and tracked their performance and said, these are the comparators that I should look at. And I'm not accepting that because, you know, it's real easy in hindsight to be able to identify things that did well and say, oh, you should have, at the time, before we knew how they were going to do, picked those. And so that just seems, you know, sort of cherry-picking idea. And then on the other side, I have somebody who's giving me indexes that, you know, the market agrees are acceptable indexes, and that seems more reasonable to look at, you know, in this, given this hindsight problem. And so we're going to go with that because other people in the market do that, and that's an accepted way to sort of think about planning and prudence and good decision making. Okay. So if that's how the district court is thinking about it, what does that mean for your dichotomy you're trying to draw between breach and injury or breach and loss? I think that's a great question because I think the hindsight problem is when you're trying to use funds to show a breach because the question would be, at the time that the prudence fiduciaries know. So we evaluate prudence at the time, and if you're going to cherry-pick a fund down the road and say they should have replaced these funds with this other fund, well, that needs to be a very close comparison so that a prudent fiduciary would have recognized at the time that that was a better option. The whole cherry-picking thing is, I don't think really makes as much sense when you're asking about a loss because there, all we're doing is trying to say, would, could the funds have performed better if they had been prudently managed? And what we did was we relied on evidence that was available at the time of selection to show that these particular alternatives, if they had been prudently investigated, if a prudent process and a loyal process had been followed, these were potentially good alternatives for the plan, and that should have been enough. But there are a lot of potentially good alternatives, and I think that's what Judge Forrest is trying to get at. Right. All of this is revisionist history, and it's hard to know what a reasonable fiduciary would have done at the time. I think the part that's not hard is the first part of your argument, which is that there was self-dealing. Right, so the change shouldn't have been made, but we do have to figure out for purposes of calculating a loss where the money should have, would have been invested. Right, and I think that's a, the Second Circuit addressed that a little bit in the Sacerdoti opinion, the idea of what would have happened if the breach had not occurred. It shouldn't be the plaintiff's burden to show that, especially to show a single particular fund that would have been chosen, because as you said, Judge Kristen, there's a wide range of options available to a prudent fiduciary. That's why we gave four, to say, here are four options that would have been suitable. But it puts an incredible onus on plaintiffs if you're going to require a plaintiff to show the fund that would have been chosen. Do you think the judge did that? I do think, I do think so. We pointed out in our briefing some of the quotes from the judge's findings that did that, to say he could not assume that any one particular fund would have been selected in the place of FlexPath, and sort of because of that, he sort of threw up his hands and said I'm going to go with the indexes, but that is resolving damages in favor of the breaching fiduciary. Well, wait, why is it resolving damages in favor of the fiduciary? The judge has to pick something, and I'm trying to figure out what's your strongest argument, I guess I should say support for your argument, that he was wrong there, in the comparator. I think the strongest argument is that we had Vanguard funds. They were replaced only as a result of the breach, and there were losses there. So if you go with some other comparator that doesn't produce losses, you're choosing the lower of the two results, and then that is resolving damages in favor of the breaching fiduciary. When you started at the top of your argument, you said the court made a mistake by failing to shift the burden. Can you circle back and give me the authority for that? Yeah, I mean, it's the Brotherston case is seminal. We said it in our briefs, the First Circuit, Second Circuit, Fourth Circuit, et cetera. I thought you were saying something different at the top of your argument, but perhaps not. No, it wasn't my intention to. Oh, okay. Then I just misunderstood you. So I'm going to ask one more question here. I am a little confused by the district court saying I don't have to determine if there is a breach or not because there is just no loss, because it seems like those two things in this scenario have to go together in a sense of if there is a universe of choices to be made by plan managers, and we'll say that some subset of those is within the duty of prudence and your fiduciary obligations to do this well to the best of your ability, then don't we have to know if the thing that we're looking at here is in that smaller universe of prudent choices or not? Because if it is, and it performed a little bit worse than the thing you already had, then so what, right? Because there was no breach. It was still a prudent choice based on what you knew at the time before we knew how it was all going to play out, right? So is that the problem then, that the district court just skipped to loss without just going through the breach analysis? Because you might lose anyways if we went to the breach analysis and determined based on the expert testimony that was presented that the choice that was made, even though there was some fiduciary stuff going on there, was still financially a prudent choice. Yes. I think if the defense could show, and it would be their burden to show that their decision to replace Vanguard with FlexPath. So I don't understand that because you're the plaintiff and you have the burden to show breach. Well, no, not for breach. I just meant objective prudence. I think it is the defense's burden to show that their decision was objectively prudent, and that's only triggered after we show a breach. So what we proved was that a prudent fiduciary would not have made that decision. And a prudent fiduciary would not have replaced Vanguard with FlexPath at that time. So if we've done that and we've established our suitable alternative, then I guess it would be up to the defense to say, well, prudent fiduciary still would not have picked your alternative or would have picked something that performed worse than FlexPath, so there's no loss. And your evidence for that would have been what? That a prudent person wouldn't have made this choice? Well, we established it through the testimony that it was all through self-dealing. So you're not relying on the expert evidence on that point? No, no, Your Honor. No, we're not. Okay. Did the operative complaint seek a disgorgement of fees? It did. Your Honor, yes. Can you give me a record site for that? Oh, golly. Maybe when you come back. Yeah, maybe when I come back. And I have one last quick question. Did you ask ever or raise to the district court ever the possibility of nominal damages? No, I don't believe we did, Your Honor. Okay. I don't believe we did. All right. I'll reserve my time. Thank you. You bet. Excuse me. Good morning, Your Honors. My name is Catalina Vergara on behalf of Defendants NFP and FlexPath. And I want to jump right in and respond to the questions Your Honors were asking my esteemed colleague on the other side, because they really go to the heart of the issue here. Counsel kept talking about how this is a case about burden, about a legal issue. It is not. This is a case where the deferential standard of review actually makes it a very easy case because what counsel is doing is attacking what are fundamentally factual issues, factual findings that the court made on loss with respect to the comparators. And Judge Smith had it exactly right. This case really does come down to what is an appropriate comparator. Plaintiffs did not meet their burden to show loss. And it is their burden. I also want to note that there's a mixing of a lot of concepts here. You've got breach. You have loss. You have loss causation. Counsel is speaking mostly about loss causation, which the court did not reach and was very clear in the findings of fact and conclusions of law. Paragraph 23, because the plan did not suffer any loss, the court need not resolve the party dispute over the burden, need not get to loss causation. I asked about nominal damages for this reason, right? What if the plaintiffs proved that there was a breach of fiduciary duty in terms of the selection and we can't show that it caused financial harm to the plan because the performance ended up being fine and it would have been a reasonable choice or whatever, absent all of the conflicts going on, wouldn't nominal damages be appropriate? Not in this case. And let me tell you why. First, plaintiffs didn't seek nominal damages. Second, plaintiffs did not, so NFP is not a defendant in this case for reasons we can discuss if your honors have questions, but its last action was beyond the repose period. And any finding as to breach or conflicted advice with respect to the November 2015 decision would have been with respect to NFP, who's not a defendant in this case. So it would not have been appropriate as to flex path. And the other thing that I would note, your honor, this goes to a more fundamental issue. This case was not pled and not tried as a case about the removal of Vanguard as the TDF. This is not a case about whether that was a breach. This is a case about whether offering the flex path funds was a breach, whether that was a prohibited transaction. Don't they go together? Not necessarily, your honor. There was a decision in November of 2015 made by the Molina Fiduciary Committee based on information that was provided to the committee, objective information that plaintiffs did not question at trial, that the court made no fine, that was established in the trial record and relied upon by the court in making its factual determinations. That was information that was provided, and the committee made a decision in November of 2015. I understand, but I don't, like, so we're talking about sort of the default thing. If you as a plan member don't make a choice, this is how your money is going to get invested, right? That's what we're talking about? Yes. So there's going to be one choice. That's the point of, you didn't make a choice, so we have to have a default. So it's not like you're going to have a menu of defaults, you're going to have one. So if you choose this new thing, you're necessarily not choosing the thing you had. So those go together. Well, yes and no, Your Honor. First, just as a technical issue, these are target date funds, so there is a selection element. You have to pick your retirement year within the FlexPath funds, but yes, this is the default option. The committee, when it decided in November of 2015 that the moderate glide path was more appropriate for its plan participants, that it wanted to remain in index investing, that was a decision that required moving away from the Vanguard Fund, which indisputably had a more aggressive glide path, and was not appropriate given the recent changes in the plan, the implementation of auto-enrollment, auto-escalation, that required a more moderate glide path. So that decision was made. So then the question is, if that decision is made, what are you moving to? And options were presented to the committee, and then ultimately FlexPath was retained as the 338 in April of 2016 to have oversight of the QDIA, of the default option in the plan, and selected the FlexPath funds for the plan. So they really are separate questions. First is the decision by the committee to move away from what was a more aggressive glide path that was no longer appropriate, and then second is, what then are you going to replace it with? But plaintiffs really are attacking the fact questions made by the court, and they're abandoning the expert whose testimony they proffered at trial on these four but-for comparators in favor of looking almost exclusively to the Vanguard Fund. But the court's decision that the four but-for comparators offered by Butow were not appropriate is amply supported by the record. It was supported by the TDF fit analysis that was presented to the committee in November of 2015. It was supported by the fact that the Vanguard Fund had been scoring poorly in terms of its performance in the period leading up to that time. There were many reasons, factual reasons, that the court weighed. And the court also, by the way, weighed the evidence related to the November 2015 presentation to the committee, the alleged conflict in the presentation of the evidence. All of that went into the mix that the court evaluated in determining that the funds that Butow put forward were not appropriate comparators. All of them used a more aggressive glide path, a glide path that the Molina Committee had decided was not appropriate. Two of them invested in actively managed underlying funds, which also the committee had expressed a preference against. They wanted index funds, a lower-cost alternative. So there were many reasons to support the court's determination that Butow's but-for funds were not appropriate comparators. And that's really what plaintiffs are challenging. They try to make this about loss causation, but again, that's a separate question. Counsel, as you know, your opponent puts much store on the shifting of the burden of proof based upon their having, if you will, presented an acceptable comparator. What's your best response to that? That the district court made a factual finding that none of the comparators offered by their expert Butow was, in fact, an appropriate comparator. And the standard, Your Honor, under Monroe and other authorities is plausibility. It has to be a plausible alternative. And here, when you're talking about target date funds, the factors that a court or a finder of fact would weigh in determining whether it's a plausible alternative are exactly the factors that the court weighed here. You know, the glide path strategy, whether it's index or active, those sorts of things. And those are the things that the court weighed here. So from your perspective, your opponent is incorrect. They never did select a comparator that shifted the burden. That is correct, Your Honor. They never proffered a comparator that was comparable. That's what the district court found. And with respect to counsel's argument about the district court's reference to the indexes put forward by a defendant's expert, the court looked to those indexes, which it can do. And Ninth Circuit authorities amply support looking to indexes when you're looking at comparators. But it really did it as a confirming step. The real crux of the district court's decision was that plaintiffs had not put forward an appropriate comparator. They had failed to meet their burden. And then it looked to the indexes to confirm that, as compared to indexes and as compared to the peer medians, that these funds actually performed very well. I see that I'm short on time. Just very briefly on prohibited transactions and on the claims against NFP. On prohibited transactions, plaintiffs sought disgorgement or seeking disgorgement on that. And the problem with that here is that they're seeking the disgorgement of FlexPath's fees, the fees that it received for serving as a 338. But the alleged prohibited transaction is the selection of the FlexPath funds. And those two things do not connect. FlexPath received its fees irrespective of what funds were selected. It was going to be paid as a 338 for that service that it provided, but its fees were agnostic as to what the underlying fund was selected. So for that reason, that claim fails. And with respect to the claims against NFP, they are time barred, as the district court found, because the last action that NFP took was in advising the committee in November of 2015 as it considered whether to remove the Vanguard funds as the target date fund in the plan and to replace it with another. Unless your honors have any other questions, I will yield to counsel for Molina. It does not appear that we do. Gosh. Wow. That's okay. Good morning, your honors. Kelly Perigo on behalf of the Molina defendants. Molina joins in FlexPath's arguments as to why the no-loss finding should be affirmed. And as to Molina, affirming that finding requires affirmance of the judgment on all counts. And that includes the prohibited transaction count, because as to Molina, the sole remedy that plaintiffs alleged for the prohibited transactions was lost to the plan. And so there's no remedy shown. So if the court agrees and affirms that fact-finding with respect to no-loss, that ends the case as to Molina. And you agree that nominal damages is not an issue in this case? I do agree, and that's because loss is an element of the breach of fiduciary claims, and indeed, plaintiffs did not seek nominal damages here. So those are two different grounds, and I'm curious about that, because I'm not sure I'll agree with you on the legal grounds. So on waiver, you think waiver applies? I'm sorry, I think... Are you relying on a legal ground for that, that nominal damages aren't in this case, or are you relying on waiver? I'm relying on both, that they were not sought and that loss is an element of the claims. All right, so on the legal grounds, what do you do with the provision in the statute that talks about an other relief that the district or that the court deems appropriate? And we could just go back to sort of remedies law, and often nominal damages falls in that kind of a category. Well, here, I think the court looked at that and didn't find that there was any relief that was appropriate. Can we tell that the district court looked at nominal damages? I didn't see that in the record. It's not, because again, it wasn't raised by plaintiffs. So that's waiver. They're not specifically addressed. There are also a number of alternative arguments that the judgment as to Molina can be affirmed here, and I'm happy to go into those if the court has questions. But again, I think that affirming the no loss finding does take care of the case as to Molina. Any additional questions, Judge Smith? None. I don't think we have any additional questions. Thank you. Thank you. Judge Christin, you asked about whether we sought disgorgement, and I think the complaint, I'd say the word disgorgement I don't think appears, but I do think it is subsumed both in the account, the privy transaction account where we ask for all losses and other equitable relief, and I think in the prayer for relief at the end where we ask for a surcharge against the defendants for all amounts involved in any transactions which violated ERISA. I want to address mostly the arguments from FlexPath and NFP. It was not a separate decision in November of 2015 to remove Vanguard and then some later decision to add FlexPath. The evidence was clear. The decision was made at the same time on the recommendation of the conflicted advisor, NFP. We also showed the court, which I don't understand why the court wasn't moved by this, that there was an effort, an ongoing effort as he recognized, the judge recognized, in the findings of fact for NFP to sell FlexPath to the plan before that FIT analysis was ever performed. So that's why we argue that the FIT analysis was just sort of a pretext for getting FlexPath into the plan because they had already been trying for a year to do it. But those are fact finding, right, and we give some deference to the district court on that. They are, and I meant it only for the purposes of saying it's not, it was not a separate decision. Are you responding to the, I think you're following up on the request for, was there a request for fees as a result of a breach of a fiduciary duty? And I think the response, I think you're following up on the response, which is that the fees had already been earned because the funds had been moved, the decision to move had been made. That's right. I mean, what I wanted to say is. Regardless of where they were moved to or what the alternative was. Right. The decision, when they hired FlexPath, the decision was clear. They already decided, Melina had decided, to add these FlexPath funds. And they viewed, everyone viewed the investment manager agreement as fund change paperwork that was needed to effectuate that change. So is that your request for, is that the basis for your request for disgorgement? Yes. So those fees were not paid to FlexPath to perform some 338 investment manager service. It was simply to get the FlexPath funds into the plan. And because those fees are intimately tied to that, then equitably they should be disgorged. Do you agree with the opposing counsel's position that the fee had been earned once the decision was made to move to a different plan, regardless of where it was moved or what was selected? And that was a very interesting point, is at trial, there was no one from FlexPath who could testify to what was done for the plan. There was no one with knowledge of what FlexPath ever did for the Melina plan in particular. All we had were NFP witnesses. And FlexPath, of course, was a representative party, but they, there was a document called Exhibit 910, I see I'm out of time, that said, it purported to be a FIT analysis that FlexPath performed a day before the funds were added. And in that analysis, they analyzed other target date funds, including TRO Price, one of our alternatives, and ultimately chose, of course, their own funds. But that was the only evidence of any work being done by FlexPath for the plan. That's why we said they didn't earn those fees. Judge Smith, any additional questions? No additional questions. Counsel, your time is up. Did you want to have any closing remarks? No, Your Honor, I just appreciate the time and encourage you to, this is a case involving self-dealing, so we really look for some way that there could be a remedy for the participants. Thank you. Thank you all for your advocacy. We'll take that case under advisement. Thank you. Thank you.
judges: SMITH, CHRISTEN, FORREST